## SUCCESSION OF GEORGE FOULKES.

T• authorize a tutor to purchase property for the benefit of the minors under his charge, he must obtain the advice of a family meeting *before the purchase.* And where he bids in property without such advice, the executrix, who caused the property to be sold, is not bound to wait till the tutor convene a family meeting, to approve of his purchase, but on failure of the tutor to comply with his bid, she may at once put up the property again for sale. C. C. 2589.

A purchaser who holds an unliquidated demand, secured by a tacit mortgage on property sold at probate sale, has no right to withhold the price of his bid and delay the adjudication until his claims can be liquidated by a court.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Durant & Hornor,* for *Howes,* opponent and appellant. *Benjamin, Micou & Finney,* for *Johanna Foulkes. St. Paul & Bouny,* for *Dr. Puissan,* appellees.

BUCHANAN, J. The mover-in this rule* represents, as tutor, certain minors, who are creditors, with general mortgage, for a large amount of the estate of *George Foulkes.* At a probate sale of the property belonging to said estate, the mover in the rule bid off certain immovable property in the name of his wards, and it is now objected that he was not authorized by the Judge, on the advice of a family meeting, to make said purchase. In the case of *Davis* v. *Leaumont,* 5 Rob. 286, it was held sufficient in law that the family meeting ratified the purchase after it was made. Again, in *McCarty* v. *Steam Cotton Press Company,* 5 La. 21, Judge Porter, as the organ of the court, used this language: "But it is said that the approbation of the Judge of probates followed, and it should have preceded, the sale. The law does not specify at what time it is to be given, and we think that when the alienation takes place by auction, where the price cannot be known before the object is stricken off, the approbation of the Judge can alone be usefully and legally given after the sale." See also 2 An. 729: 4 An. 85; C. C. 1788.

The terms of the probate sale were one-third cash and the balance at one and two years' credit, for notes bearing mortgage and interest from date. The amount of the tutor's bid was $5000, and the administratrix of *George Foulkes* required of the tutor, by notice in writing, and through a Notary Public, a compliance with the terms of sale, by giving the cash and notes. Upon his failure to comply, the formalities required in case of a *folle enchère,* by Art. 2589 of the Code were followed, and the property was offered for sale a second time, and adjudicated to *Dr. Puissan* for $3250. The validity of the second sale necessarily depends upon the obligation of the tutor of *John Foulkes'* minor children, to give cash and notes to the amount of the bid made for their account. But it

---

* On motion of *Durant & Hornor,* attorneys for *Robert Howes,* tutor of the minor children of *John Foulkes,* and on showing to the court that, on or about the 29th March, 1854, he bought, as tutor, at public sale, under an order of court, made by *Beard & May,* Auctioneers, a certain tract of land, belonging to the succession of *George Foulkes,* situated in this parish, right bank of the Mississippi river, about four miles below the city, measuring two arpents front on the Mississippi by forty arpents deep, for the price of five thousand dollars; and on further showing that he is a creditor of this succession, in the sum of six thousand and fifty-six dollars, with interest from 8th December, 1855, and legal mortgage from 20th December, 1848; and that he desires to retain the price of the property in part, and satisfaction of the aforesaid judgment.

It is, therefore, now ordered by the court, that *Johanna Foulkes,* administratrix of this succession, do show cause, on Saturday next, the 13th day of January, 1855, at 10 o'clock, A. M., why she should not perfect the said sale and transfer, by authentic act, to promovent the title to said property, and that *Dr. P. R. Puissan* be made a party to this rule.

75

SUCCESSION OF
FOULKES.
is plain, he was under no such obligation. The minors whom he represented were creditors, with mortgage, of the estate of *George Foulkes*, who had been their tutor, and had died without rendering an account of tutorship. The amount of their claim against *George Foulkes'* estate was liquidated at the sum of $6056, by a judgment rendered after the probate sale; but the administratrix of *George Foulkes* had acknowledged, in an inventory made six months previous to that probate sale, that the estate of her deceased husband was indebted to the minors in a larger sum than the amount of their bid, to wit: in the sum of $5883 40. Now the law is well settled since the case of *Goodale* v. *Creditors*, 8 L. 302, that a mortgage creditor who purchases, at a judicial sale, property subject to his mortgage, may retain the price of adjudication in satisfaction of his claim, except so far as it exceeds the amount of his mortgage. The syndic or administrator can only require of him security to refund or meet such charge as may be afterwards legally ordered. In the present case, the administratrix was without right to require of the tutor of the minors *Foulkes* the whole amount of the bid, as she has done, and her subsequent acts gave no right to *Dr. Puissan* to the prejudice of those minors.

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed, that the cause be remanded, with instructions to convene a family meeting of the minor children of *John Foulkes*, in order to deliberate upon the propriety of ratifying the purchase made for the said minors by *Robert Howes*, their tutor, of a certain tract of land belonging to the succession of *George Foulkes*, at a public sale, on the 29th March, 1854, as shown by the proces verbal of *Joseph A. Beard*, auctioneer, on file in this case; that on such ratification being filed, this rule be made absolute, and the administration of *George Foulkes* be ordered to make a conveyance to the minor children of *John Foulkes*, represented by their tutor, *Robert Howes*, of the property mentioned in the rule, the firm to be credited upon the judgment obtained by said minors against the succession of *George Foulkes*, and that appellees pay costs of the rule in both courts.

SLIDELL, C. J., (with whom concurred SPOFFORD, J.,) dissenting. The tutor had no authority, by mere virtue of his office, to buy real estate for his wards. C. C. 348; see also *Davis* v. *Leaumont*, 5 Rob. 287; *Hall* v. *Woods*, 4 An. 85; *Carlin* v. *Germaine*, 6 La. 218.

The claim of the minors was, at the time of the attempted purchase, unliquidated and in litigation. After the adjudication, and his refusal to comply with the terms of sale, dictated by the creditors and ordered by the court, the tutor took even then no steps to have a judicial ratification of the purchase for the minors, upon advice of a family meeting, and judicial approval, nor to obtain an order of court, contradictorily with the administratrix or the numerous creditors of the succession, suspending the settlement for the price until the claim and alleged priority of the minors could be judicially ascertained. The tutor in so acting had no legal warrant. He had no right to put the estate and its creditors in such an uncertain and precarious position. Suppose the property had perished, while he was thus refusing to comply with the terms of the adjudication, and at the same time neglecting to obtain a judicial approval of his purchase; the minors could say, it has not perished for our account and at our risk—our tutor had no right to buy, and our claim against the estate exists intact.

I am, therefore, of opinion that, under such circumstances, the tutor obstinately persisting, during several months, in acting of his own head, and taking no steps to have a family meeting, or get an order of court contradictorily with the administratrix or the other creditors, authorizing the administratrix to suspend action; the administratrix fulfilled her duty in proceeding, after his long default, to a second crying and adjudication, and that *Puissan*, who bid in good faith, has a right to insist on his purchase. If the minors suffer a loss, it is the result of their tutor's mismanagement, for which they can look to him; but it would be a dangerous precedent to throw upon others the consequences of a tutor's lack of judgment and diligence. It was a matter for his sound and diligent discretion .in the administration of his trust, to determine seasonably whether he would let the estate of the debtor he sold to others, and exercise the claim of his wards on the proceeds, or whether it would be desirable to buy for the minors, If his sound discretion suggested the latter course, then it was his duty to ask the advice of a family meeting and judicial authorization thereon, either before the adjudication or, at least, promptly afterwards. C. C. 348. He has done neither. He does not even suggest, in the present rule, a call for a family meeting, but claims a conveyance to himself, as tutor, and, by consequence, a rescission of the adjudication to *Pouissan*, a defendant in the rule, on the naked showing that he thought proper to bid for the minors, and that their tacit mortgage claim, then unliquidated and in litigation, has, since the adjudication to *Pouissan*, been ascertained by judgment. Upon the pleadings and evidence I am not prepared to say the learned Judged below erred in dismissing the rule.